LAW OFFICES OF
# SCOTT B. TULMAN & ASSOCIATES, PLLC

THE HELMSLEY BUILDING
230 PARK AVENUE, 18th Floor
NEW YORK, NEW YORK 10169
(212) 867-3600

stulman@tulmanlaw.com
WWW.TULMANLAW.COM

FILED on ECF

April 4, 2020

Honorable Gregory H. Woods
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York  10007

      Re:    <u>United States v. Fangrang Qu</u>
              18 Cr. 827 (GHW)

Dear Judge Woods:

      I represented Defendant Fangrang Qu in the above matter and represent him here for purposes of this application seeking a judicial recommendation to the Federal Bureau of Prisons ("BOP") that it make a motion to this Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to modify Mr. Qu's sentence so that he can immediately be released from the Metropolitan Detention Center in Brooklyn ("MDC") where he is housed in a lockdown to home confinement where he can serve the remainder of his sentence as a special condition of this Court's previously imposed two year term of supervised released.  A modified sentence would require that Mr. Qu be subject to home confinement, under the supervision of the Department of Probation until the date he was originally scheduled to be released to supervised release.  This serves the purpose of punishing Mr Qu and deterring others, as originally intended by the Court, without exposing him to the dangerous and harsh conditions of confinement at the MDC, which is a punishment the Court never contemplated.

      We seek this judicial recommendation in an effort to influence the BOP's administrative process and its decision makers in making release determinations as to individual defendants suitable for home incarceration and to prompt them to make a motion, based on a recommendation that the Court would likely grant such a motion.

      I respectfully submit that the COVID-19 crisis has created unforeseen cruel and unusual conditions at the MDC that were never contemplated by the Court or Defense Counsel at the time Mr. Qu voluntarily surrendered on February 14, 2020, to begin serving the six month sentence imposed by the Court, and that "extraordinary and compelling reasons" warranting the

modification exist here for the reasons set forth in the attached Opinions and Orders of a number of District Judges in this District.

The relief we seek at this time is not an Order modifying Mr. Qu's sentence because Mr. Qu has not yet exhausted his administrative remedies, and cannot seek this relief. We seek only a recommendation to the Bureau of Prisons that a motion be made signaling the need for swift Executive Action for this Defendant, even if this Defendant does not meet the criteria being relied upon to prioritize the motions it is making. I contacted the Government on April 1, 2020 to discuss the Government's position on a motion to modify Mr. Qu's sentence, but was informed any such motion would have to go "up the chain." Thereafter, I began reviewing submissions in other cases similar to that of Mr. Qu where the Government was taking the position that inmate's motions seeking relief in the District Court pursuant to 18 U.S.C. §3582 and could not be entertained until they had first fully exhausted their administrative remedies. Time is of the essence in these matters, and since it is the Courts that ultimately have to determine these motions, it might be helpful for the Federal Bureau of Prisons to have some guidance from the sentencing judges as to those inmates the sentencing judges believe should be released to home confinement. Since this can only be done on a case by case basis, I ask the Court for its recommendation as to Fangrang Qu – a non-violent first offender.

On December 20, 2019, Your Honor sentenced Mr. Qu principally to 6 months, a two year term of supervised release and restitution, following his guilty plea to conspiring to traffic in counterfeit goods in violation of 18 U.S.C. §§ 2320. The Court, as part of its sentence, recommended to the Federal Bureau of Prisons ("BOP") that it "designate the defendant to an institution close to New York City." (See Exhibit A, United States v. Suen (Fangrang Qu) 18 Cr 827, Doc. No. 100, attached as Exhibit A). At defense counsel's request, the Court made this sentencing recommendation believing it was assisting Mr. Qu in maintaining his ties with his wife and children who reside with him in Hicksville, New York. The Bureau of Prisons followed the Court's recommendation and designated Mr. Qu to the MDC. Had the Court known at the time of sentencing or in early February, 2020, what was to ensue in the coming months following Mr. Qu's surrender, it would not have recommended that Mr. Qu be incarcerated close to New York City and it would likely have granted a motion by defense counsel to extend the time for Mr. Qu to surrender, as it did for Defendant Miyuki Suen. (See, Exhibit B, United States v. Suen, 18 Cr. 827, Document No. 139).

The Court set a surrender date of February 14, 2020. Mr. Qu, who was on pre-trial release throughout the criminal proceeding, voluntarily surrendered to the MDC on February 14, 2020 and has been incarcerated there since that date. The BOP website reports that he is scheduled to be released on August 12, 2020. Mr. Qu is now 32 years old. I cannot represent that Mr. Qu currently suffers from any medical condition that makes him unusually susceptible to severe complications were he to contract COVID-19 because I have had no communication with Mr. Qu. He speaks broken English, and is in a lockdown, as described in Exhibit B, attached hereto. It is obvious though that the current conditions at the MDC substantially

diminish Mr. Qu's ability to provide self-care within the environment of the MDC to protect himself from COVID-19. See U.S.S.G § 1B1.13. The Court already knows that Mr. Qu is not a danger to the safety of any other person or the community.

    I have been in communication with Mr. Qu's family, but he is in no position to help himself by filing on his own behalf an appropriate form to the MDC seeking compassionate release. In an effort to assist Mr. Qu (unbeknownst to him), on April 3, 2020, I sent an email to designated emails for communication with the MDC that reads as follows:

> Fangrang Qu is a 32 year old housed at the MDC serving a 6 month sentence for trafficking in counterfeit sneakers. He surrendered to serve his sentence on or about February 12, 2020, and the BOP website reports his release date as 8/12/2020. I respectfully request that he be evaluated and considered for compassionate release to home confinement with electronic monitoring at his family home in Queens. While the PSR states that Mr. Qu appears to be healthy based on outward appearance, I know from personal observations that he was a heavy smoker making him more susceptible to lung disease and the effects of COVID-19. He poses no danger to any person or the community, and has a place to go - his wife and children in Queens.
>
> My client does not speak English and by reason of the lockdown is unable to take any steps to help himself. I make this request on his behalf.
>
> Thank you,
>
> Scott Tulman

    The recommendation that we seek here is not outside the scope of the Court's authority. Indeed, the statutory framework leaves no doubt that while it is the Federal Bureau of Prisons that ultimately determines the place of imprisonment, the District Court has a role to play, if it chooses, by making at the time of sentencing "a recommendation concerning the type of prison facility appropriate for the defendant. . ." 18 U.S.C §3582(a). The Court also can make other non-binding recommendation regarding the sentence it imposes. See, generally, <u>United States v. Pineyro</u>, 112 F.3d. 43 (2d Cir. 1997). While such recommendations are non-binding and non-appealable, they nevertheless are important because they provide guidance to the Bureau of Prisons as to the intentions and views of the sentencing judge. Recently, faced with unprecedented and unforeseen challenges by the COVID-19 crisis, the Courts have sought to use their influence and wisdom to recommend "rational and right" results for individual defendants even when they do not have the power to order a particular result.

In United States v. Nkanga, 18 Cr 713 (JMF), for example, Judge Furman was constrained to deny recent a bail application made pursuant to 18 U.S.C. §3145(c) on behalf of a vulnerable sentenced defendant housed at the MDC because the law did not give him the authority to grant such an application. Judge Furman made a point of opining however, that "the rational and right" result was for the vulnerable defendant to be released from the MDC because of the COVID-19 virus and he lamented the fact that the Court was powerless to do so. Further, in a footnote, Judge Furman expressly approved of the Government's representation that it would seek to expedite the Defendant's designation and, if feasible, transfer. (See, Exhibit C, Opinion and Order of Hon. Jesse M. Furman dated March 31 2020, in United States v. Nkanga, 18 Cr. 713 (JMF), Document 87). Finally, Judge Furman observed in a footnote that the Defendant had not moved for relief pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the statute at issue in this application

Here, this Court is not powerless to act on applications made in appropriate cases to modify sentences pursuant to the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). I am mindful, however, that the compassionate release statute contains an exhaustion requirement requiring that before seeking relief in the District Court an inmate first fully exhaust all administrative remedies available to appeal a failure by the Bureau of Prisons to move for relief pursuant to 18 U.S.C. §3582(c)(1)(A)(i). At least one Court in this District, however, has held that exceptions to the exhaustion requirement might be applicable in Mr. Qu's case because of the COVID-19 crisis. (See e.g. Exhibit D, Opinion and Order of the Hon. Analisa Torres dated April 1, 2020 in United States v. Perez, 17 Cr. 513 (AT), Document 98).

To balance the express exhaustion requirement in the compassionate release statute against the need for immediate action to redress the documented conditions at the MDC during this National Emergency, Mr. Qu has nowhere to turn but this Court while awaiting action by the deluged BOP on the email request I sent to it. Accordingly, we respectfully request that the Court support the request for compassionate release made by Fangrang Qu through me on April 3, 2020, by opining and recommending to the Bureau of Prisons that it expeditiously grant Mr. Qu's pending request and make a motion to modify Mr. Qu's sentence pursuant to 18 U.S.C. §3582(c)(1)(A)(i), based upon the "extraordinary and compelling" conditions created by the COVID-19 crisis. This will empower the Court to modify Mr. Qu's sentence by amending it to conclude his outstanding term of imprisonment forthwith, and to amend his two year term of supervised release to include a special condition requiring home incarceration for what would otherwise have been the remainder of Mr. Qu's term on the previously imposed sentence, i.e. home confinement through and until August 12, 2020.

Attorney General Barr has acknowledged in a Memorandum to the Director of Prisons dated April 3, 2020 that the COVID-19 pandemic is materially affecting the operations of the Bureau of Prisons. (Exhibit E). It would be helpful, I respectfully submit, for sentencing judges to weigh in on those inmates it sentenced that it believes are suitable candidates for home

incarceration, so as to assist the BOP and promote "rational and right" decisions as to which inmates should receive the benefit of compassionate release motions.

    We thank the Court for its consideration of this request.

Respectfully submitted,

Scott B. Tulman

SBT:ss

cc:    Daniel G. Nessim, Esq.
       Assistant United States Attorney

    Application denied. The Court does not understand that Mr. Qu has particular medical needs that make him vulnerable to COVID-19. The Bureau of Prisons is confronting a national issue; the Court declines to make a recommendation that they prioritize Mr. Qu's needs over those of other inmates who may be confronting more substantial concerns. The Court is not certain that it is rational and right for the Court to ask that the BOP focus its limited resources on inmates with the most effective and energetic counsel, rather than on the inmates with the greatest needs and vulnerabilities. The Court also notes the limitations on the Court's authority with respect to such issues. *See* 18 U.S.C. § 3621(b). The Clerk of Court is directed to terminate the motion pending at Dkt. No. 140.

SO ORDERED
April 5, 2020

GREGORY H. WOODS
United States District Judge